**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| **ZEBULON TREVOR PASSMORE,**<br><br>PLAINTIFF,<br><br>vs.<br><br>**MACON COUNTY, TENNESSEE, RACHEL MEYER, BRIAN EMBERTON, JOSEPH WOODARD, JASON VINSON, and KYLE PETTY,**<br><br>DEFENDANTS. | No.: __________________<br><br>JURY DEMAND |

# COMPLAINT

Comes the Plaintiff, Zebulon Trevor Passmore, and for his cause of action against the Defendants would respectfully show to the Court and Jury as follows:

## I. THE PARTIES

1.1 The Plaintiff, Zebulon Passmore ("Mr. Passmore"), is a resident of Lafayette, Macon County, Tennessee.

1.2 The Defendant, Macon County, Tennessee ("Macon County") is a governmental entity located in Macon County, Tennessee, and at all times relevant to the Complaint was responsible for the customs, policies, procedures, and training of its employees as well as the wrongs committed by deputies pursuant to Tenn. Code Ann. § 8-8-302.

1.3 The Defendant, Rachel Meyer ("Defendant Meyer") is, upon information and belief, a resident of Macon County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a Deputy Sheriff of the Macon County Sheriff's Office. Defendant Meyer is being sued in her individual capacity.

1.4 The Defendant, Brian Emberton ("Defendant Emberton"), is, upon information and belief, a resident of Macon County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a Deputy Sheriff of the Macon County Sheriff's Office. Defendant Emberton is being sued in his individual capacity.

1.5 The Defendant, Joseph Woodard ("Defendant Woodard"), is, upon information and belief, a resident of Macon County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a Deputy Sheriff of the Macon County Sheriff's Office. Defendant Woodard is being sued in his individual capacity.

1.6 The Defendant, Jason Vinson ("Defendant Vinson"), is, upon information and belief, a resident of Macon County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as a Deputy Sheriff of the Macon County Sheriff's Office. Defendant Vinson is being sued in his individual capacity.

1.7 The Defendant, Kyle Petty ("Defendant Petty"), is, upon information and belief, a resident of Macon County, Tennessee, and at all times relevant to this Complaint was acting under color of state law as the Chief Deputy Sheriff of the Macon County Sheriff's Office. Defendant Petty is being sued in his individual capacity.

## II. JURISDICTION

2.1 This Court has jurisdiction over the Federal claims asserted in this action pursuant to 28 U.S.C. § 1331 (Federal Question) and § 1343 (Civil Rights), as well as 42 U.S.C. § 1983. This court has jurisdiction over the State law claims asserted in this action pursuant to 28 U.S.C. § 1367 (Supplemental), as both the State claims and Federal claims form part of the same controversy.

## III. VENUE

3.1 Venue of this action is proper pursuant to 28 U.S.C. § 1391(b) in that the events giving rise to the action occurred in the Middle District of Tennessee.

## IV. NATURE OF THE CASE

4.1 This action arises under the First and Fourth Amendments to the United States Constitution and under federal law, specifically, 42 U.S.C. § 1983 *et seq*., for violations of the Constitutional Rights of Zebulon Passmore. It also arises under the statutory and common laws of the state of Tennessee.

## V. FACTS AND CONSTITUTIONAL AND STATUTORY STANDARDS

### A. August 8, 2025, Incident

5.1 On August 8, 2025, Zebulon Passmore was getting ready to mow the grass at his residence in Lafayette, Macon County, Tennessee.

5.2 Mr. Passmore's chickens were congregated underneath his van, and he used his handgun to fire two shots into the ground to herd his chickens back to their coop.

5.3 The shots were directed downward away from any person and did not place, and could not have placed, anyone in any imminent danger of death or serious bodily injury.

5.4 With his chickens safely put away, Mr. Passmore began to mow his grass.

5.5 Just before 5:00 p.m., Mr. Passmore's neighbor, Kelley McDonald, contacted authorities and claimed that his neighbor had fired three shots.

5.6 During the call, the dispatcher sought to confirm where the shots had been fired, and Mr. McDonald admitted, "Well I don't know which direction he shot," and later stated, "We hope it's in the air."

5.7 Mr. McDonald identified his neighbor as "Zebulon Passmore" and further informed the dispatcher that Mr. Passmore had not said anything to him, had not threatened him in any way, and was merely mowing his grass.

5.8 Shortly after 5:00 p.m., Defendant Meyer arrived and spoke with Mr. McDonald who again confirmed that he had not seen Mr. Passmore shoot and said, "I assume he shot up in the air."

5.9 Mr. McDonald told Defendant Meyer that he was agitated with Mr. Passmore who would shoot at a target in his yard on a regular basis and that there was an ongoing property line dispute between the two neighbors.

5.10 Mr. McDonald further told Defendant Meyer that Mr. Passmore had not said anything to him that day and that they had not spoken at all for several years.

5.11 Mr. McDonald did not tell Defendant Meyer, or anyone else, that Mr. Passmore had physically or verbally threatened him or that there had been any type of altercation.

5.12 After Defendant Meyer spoke with Mr. McDonald, Defendant Emberton arrived and went with Defendant Meyer to speak with Mr. Passmore who was still on his property and mowing his grass.

5.13 Before explaining to Mr. Passmore the reason for the deputies coming onto his property and approaching him, Defendant Emberton told Mr. Passmore that he was going to seize Mr. Passmore's handgun.

5.14 Mr. Passmore verbally told Defendant Emberton that he was not consenting to the seizure of his handgun but also did not resist when Defendant Emberton went ahead and reached for and removed Mr. Passmore's handgun from the holster on Mr. Passmore's hip.

5.15 After Defendant Emberton seized the firearm, Defendant Meyer informed Mr. Passmore that they got a call about someone firing shots in the air, and Mr. Passmore informed Defendants Meyer and Emberton that no crimes had been committed on his property.

5.16 Defendant Emberton, while holding Mr. Passmore's gun, then stated that the deputies were not saying that he had committed a crime and claimed that as soon as they had figured this out and there was nothing wrong then he would return Mr. Passmore's gun.

5.17 Defendant Meyer then asked Mr. Passmore specifically whether he fired shots into the air, and Mr. Passmore immediately responded by saying, "No."

5.18 Defendant Meyer next asked Mr. Passmore why they had gotten a call about someone shooting in the air.

5.19 Mr. Passmore then informed Defendants Meyer and Emberton that he had shot into the ground to get his chickens back into their coop before he started cutting his grass, and Defendant Meyer stated, "I understand that completely."

5.20 Defendants Vinson and Woodard arrive at this time and joined Defendants Meyer and Emberton on Mr. Passmore's property, and the individual Defendants partially surrounded Mr. Passmore while Defendant Emberton held Mr. Passmore's handgun in his hand.

5.21 With these individual Defendants present, Defendant Meyer again asks whether Mr. Passmore had fired into the air, and Mr. Passmore again said, "No, I would never do that."

5.22 Defendant Meyer next asked whether Mr. Passmore had any identification with him.

5.23 Mr. Passmore responded that he had not committed any crime.

5.24 Defendant Meyer asserted to Mr. Passmore that because they were "on a call for service" that they had to identify everybody.

5.25 Mr. Passmore stated that he did not have his identification on him but that he wanted to protect his Fourth Amendment right.

5.26 Defendant Meyer responded by saying, “The Fourth Amendment, at this point, gets put aside.”

5.27 Mr. Passmore places his hands behind his back and says that he will not fight them or resist but also that he would not “ID” when there had been no crime.

5.28 Defendant Emberton claims that they did not want to arrest Mr. Passmore, and Mr. Passmore says that they did not want to identify him either because he had not committed any crime.

5.29 Defendant Emberton claims that the deputies had a “right to ID” Mr. Passmore because they had received a “call for service.”

5.30 Mr. Passmore asked what crime he was being arrested for and said, “I am not refusing to ID, but until you give me a lawful reason as to why I have to ID.”

5.31 Defendant Meyer informs Mr. Passmore that he was not being arrested and was only being detained.

5.32 Defendant Vinson claimed that Mr. Passmore had to provide identification “because we got a call for service.”

5.33 Defendant Woodard then claimed hypothetically that the neighbor could have claimed that Mr. Passmore shot at them, and Mr. Passmore, despite having already denied any criminal conduct, reiterated that the burden of proof is still on them to prove where he shot and it was not on him to prove that he was innocent.

5.34 Mr. Passmore again asked if the deputies were going to arrest him for failing to identify without any other criminal charge where he had not committed any crime and asked whether he was free to go.

5.35 Defendant Meyer responded that Mr. Passmore was not free to leave, and Mr. Passmore again asked what crime was the basis of the detention.

5.36 Defendant Meyer said, “It’s an investigation.”

5.37 After being told that this was just an investigatory detention, Mr. Passmore rescinded any invitation that the officers may have had to be on his property, that they were trespassing, and informed the officers that the encounter was not consensual.

5.38 The individual Defendants refused to leave, remained on Mr. Passmore’s property, and Defendant Meyer then said, “We don’t want to have to take you to jail.”

5.39 Mr. Passmore responded that he did not want to go to jail but again explained that they needed an original crime to arrest him on and not merely a refusal to identify himself.

5.40 Mr. Passmore then went on to explain that if the deputies arrested him in violation of his rights then he would have to fight it out in court and, “If I have to sue the County, then I’ll sue the County.”

5.41 Defendant Vinson then claimed that they had to obtain his ID to see “who they were dealing with,” to which Mr. Passmore explained that their call for service did not require him to give up his Fourth Amendment rights.

5.42 Defendant Woodard again asked how they were supposed to know whether he fired shots into the ground or the air, and Mr. Passmore again explained that it was not his burden of proof to prove that he did not fire into the air but stated, “Now, I’m sitting here telling you I’m not a moron. So, I didn’t shoot in the air.”

5.43 At this point, Defendant Meyer instructed Mr. Passmore to place his hands behind his back and commenced to arrest Mr. Passmore by handcuffing him and taking Mr. Passmore's personal property from him.

5.44 While being handcuffed, Mr. Passmore asked again what he was being arrested for, and Defendant Meyer stated, "Right now, failure to identify."

5.45 After Mr. Passmore again told the deputies that they needed an original offense, Defendant Vinson tells him, "Disorderly Conduct."

5.46 Mr. Passmore then explains that disorderly conduct cannot occur on private property, and Defendant Vinson claims, "You were being disorderly when you aren't doing what we ask."

5.47 Defendants Meyer, Emberton, Woodard, and Vinson were aware that neither Mr. McDonald nor Mr. Passmore had supplied them with factual information which indicated that Mr. Passmore had committed any crime nor were there any other facts known to them to support the arrest of Mr. Passmore.

5.48 Defendants Emberton, Woodard, and Vinson participated in and/or failed to intervene in Mr. Passmore's arrest by Defendant Meyer despite knowing that there was no probable cause for Mr. Passmore's arrest, and each of them had the time and opportunity to prevent Mr. Passmore's arrest and subsequent transport to the jail for booking and being formally charged with criminal violations but chose not to intervene.

5.49 As Mr. Passmore was being arrested, Defendant Emberton also spoke with Mr. McDonald who again stated, "I don't know that he shot back here."

5.50 Defendant Emberton then went to speak with Defendant Petty who had arrived at the location by that time and was speaking with the other deputies.

5.51 Defendants Emberton and Woodard explained to Defendant Petty that they were on a call for service and that Mr. Passmore refused to identify himself, that Mr. Passmore said that he had not committed any crime, and that Mr. Passmore claimed that they were violating the Fourth Amendment.

5.52 Defendant Emberton also told Defendant Petty that Mr. Passmore had informed them that he had fired shots into the ground and not the air.

5.53 Defendants Meyer, Emberton, Woodard, Vinson, and Petty then speculate about potential crimes that they could charge Mr. Passmore with, and Defendant Meyer said, "Failure to Identify" and that she was "pretty sure that he's intoxicated. I can smell it."

5.54 Defendant Woodard claims that he could "smell it" as well, and Defendant Vinson then says, "That's disorderly, ain't it."

5.55 Defendant Petty then says, "If you don't cooperate with the investigation you can only go off what the witness says."

5.56 Defendant Woodard then suggests reckless endangerment as a charge.

5.57 Defendant Petty then spoke with Mr. McDonald who again provided Mr. Passmore's name and told Defendant Petty that he only heard three shots but did not claim to have seen the shots and admitted, "I'm not saying he shot at us."

5.58 While Defendant Petty was speaking with Mr. McDonald, Defendant Meyer admitted, "Had he just identified himself, it could have been informal, and we would have been on our way."

5.59 Defendant Petty was aware that there was factual information which indicated that Mr. Passmore had not committed any crime and that there was no factual information which supported that Mr. Passmore should be placed under arrest.

5.60 Defendant Petty had the time and opportunity to prevent Mr. Passmore's continued detention, transport to the jail, booking, and being formally charged with criminal violations but deliberately chose not to intervene.

5.61 After Mr. Passmore was placed under arrest in the back of the police car, he asked Defendant Meyer to give the keys to his van to his wife because he had the only key to that vehicle and that vehicle was the only vehicle that had car seats for their children.

5.62 Although Defendant Meyer initially took the keys to give to Mr. Passmore's wife, Defendant Emberton said that he would not give the keys to Mr. Passmore's wife because they did not want to be "liable" and that Mr. Passmore had already said that he was going to sue them.

5.63 As Defendant Meyer was taking Mr. Passmore to the jail, he asked her what he was being arrested for, and Defendant Meyer stated, "Right now, failure to identify – disorderly conduct."

5.64 After taking Mr. Passmore to the jail for booking, Defendant Meyer then swore out an affidavit of complaint alleging that Mr. Passmore had violated Tenn. Code Ann. § 39-13-103 (Reckless Endangerment) and Tenn. Code Ann. § 39-16-602 (Resisting Stop, Frisk, Halt, Arrest or Search).

5.65 The statements made by Defendant Meyer in her affidavit of complaint were material in obtaining the criminal warrant against Mr. Passmore for violating Tenn. Code Ann. §§ 39-13-103 and 39-16-602 and prosecuting him for those charges.

5.66 Defendant Meyer knowingly and deliberately made false statements as well as knowingly and deliberately omitted material facts to obtain the criminal warrant against Mr. Passmore.

5.67 Defendant Meyer, with reckless disregard of the truth, made the false statements and omissions to obtain the criminal warrant against Mr. Passmore.

5.68 Without Defendant Meyer's false statements and omissions, there was no probable cause for prosecuting Mr. Passmore for violating Tenn. Code Ann. §§ 39-13-103 and 39-16-602.

5.69 As a result of the criminal charges, Mr. Passmore was prosecuted for these criminal acts and was deprived of his liberty by being confined in the Macon County Jail.

5.70 Defendant Meyer swore in the affidavit of complaint that Mr. McDonald had stated that Mr. Passmore "fired several shots into the air."

5.71 Defendant Meyer's statement in the affidavit of complaint was false in that Mr. McDonald did not state that Mr. Passmore had actually fired shots into the air and had only stated that he "assumed" that Mr. Passmore shot into the air.

5.72 Defendant Meyer also swore in the affidavit of complaint that Mr. McDonald "stated that the suspect then started walking toward him and Cortes with the firearm still on his hip."

5.73 Defendant Meyer's statement in the affidavit of complaint was misleading in that Mr. McDonald did not state that Mr. Passmore "started walking towards him with a firearm on his hip" and had actually stated that Mr. Passmore was mowing his grass and that he always had a gun on his hip.

5.74 Defendant Meyer's affidavit of complaint omitted the fact that Mr. McDonald was only making assumptions about whether Mr. Passmore had fired into the air and had clearly and repeatedly stated that Mr. Passmore had not fired towards him or anyone else.

5.75 Defendant Meyer's affidavit of complaint omitted the fact that Mr. McDonald had told her that he was aggravated by Mr. Passmore and that there had been an ongoing property line dispute demonstrating that Mr. McDonald had animosity towards Mr. Passmore.

5.76 Defendant Meyer's affidavit of complaint omitted the fact that Mr. McDonald had stated that he had not spoken with Mr. Passmore that day, that Mr. Passmore had not made any threats against Mr. McDonald, and that there had been no verbal or physical altercation between the two neighbors.

5.77 Defendant Meyer's affidavit of complaint omitted any facts stating that Mr. Passmore had used any force against any law enforcement officer to prevent or obstruct any law enforcement officer from conducting a stop, frisk, halt, arrest, or search of Mr. Passmore.

5.78 Defendant Meyer's affidavit of complaint omitted the fact that Mr. Passmore had not used force against any law enforcement officer and omitted that he had physically complied with each law enforcement officer who placed him in handcuffs, searched him, removed his property, and placed him in the back of the police car.

5.79 Defendant Meyer's affidavit of complaint was misleading and gave the false impression that Mr. Passmore had threatened Mr. McDonald and had fired his gun in the air in a threatening manner and that he had resisted the law enforcement officer's efforts to conduct a stop, frisk, halt, arrest, and search through the use of force against the officers.

5.80 During the entire interaction with the Defendants, Mr. Passmore did not use any force against the Defendants or physically resist any of the officer's commands.

5.81 Mr. Passmore repeatedly insisted that he wanted to protect his Fourth Amendment rights and that he would provide his identification once the Defendants gave him a lawful basis for doing so.

5.82 Mr. Passmore was initially detained by Defendants Meyer, Emberton, Woodard, and Vinson to investigate an allegation that he had fired a gun into the air.

5.83 On October 22, 2025, all of the criminal charges pending against Mr. Passmore were dismissed.

**B. Applicable Constitutional and Statutory Standards**

5.84 Under the Fourth Amendment, an investigatory detention requires reasonable suspicion of a crime, which means that a law enforcement officer must have more than a mere hunch or intuition, and, at a minimum, the law enforcement officer must be able to make an inference from specific facts known to the officer that tend to suggest a crime had been committed.

5.85 Any reasonable law enforcement officer would know that the mere firing of a gun into the air is not a crime in Tennessee and that, as had been reaffirmed by the Tennessee Supreme Court in March of 2025 in ***State v. Rimmel***, 710 S.W.3d 640, 651 (Tenn. 2025), the mere possibility of harm was not sufficient to violate Tenn. Code Ann. § 39-13-103.

5.86 After speaking with both the complainant, Mr. McDonald, and the alleged suspect, Mr. Passmore, the individual Defendants were actually aware that there was no evidence that Mr. Passmore had violated any criminal law because there was no evidence that any shots were fired in the direction of any person and that no person was in imminent danger of death or serious bodily injury.

5.87 After speaking with Mr. McDonald and Mr. Passmore, the individual Defendants knew that Mr. McDonald had not seen where Mr. Passmore fired the shots, that Mr. McDonald had not been threatened, that Mr. Passmore denied firing toward anyone, and that Mr. Passmore had stated that he fired two shots into the ground to move his chickens, leaving the individual Defendants without any evidence that a crime had been committed.

5.88 Despite having no evidence that a crime had been committed, the individual Defendants continued the investigatory detention of Mr. Passmore and demanded that he provide identification even after any authority to continue such detention of Mr. Passmore had ceased.

5.89 Despite the individual Defendants having no factual basis to continue to detain Mr. Passmore, the individual Defendants continued Mr. Passmore's detention without reasonable suspicion merely to obtain his identification which was not necessary to complete their investigation into whether a crime had been committed.

5.90 Under the Fourth Amendment, an arrest, or seizure of a person, requires probable cause which means the officer must have facts and circumstances within the arresting officer's knowledge which would be sufficient to cause a prudent person to believe that a particular person had committed or was committing an offense.

5.91 After the individual Defendants failed to provide Mr. Passmore with a lawful basis for requiring his identification and continuing the detention, the individual Defendants placed Mr. Passmore under arrest for allegedly "failing to identify" and "disorderly conduct."

5.92 Under Tennessee law, the mere refusal of a person to provide identification during an investigatory detention is not a crime.

5.93 Any reasonable law enforcement officer in Tennessee would know that it is not a crime for a person to fail to provide one's identification where there is no other criminal offense.

5.94 Under Tennessee law, the crime of Disorderly Conduct (Tenn. Code Ann. § 39-17-305) subsection (a) of that statute requires that the prohibited conduct occur "in a public place," and none of the conduct described in the statute does not include merely refusing to comply with an officer's request for identification and subsection (b) requires an "unreasonable noise" that prevents someone from carrying on a lawful activity which Mr. Passmore also did not violate

because no one was prevented from carrying on a lawful activity by him shooting his handgun to herd his chickens into their coop.

5.95 Any reasonable law enforcement officer in Tennessee would know that refusing to provide identification, questioning an officer's legal basis for demanding identification, and firing a handgun into the ground under the circumstances known to the individual Defendants while on the person's own property did not constitute disorderly conduct under Tenn. Code Ann. § 39-17-305.

5.96 Despite the fact that the individual Defendants were aware that there were no facts which would lead a reasonable law enforcement officer to conclude that Mr. Passmore had violated any criminal statute, and that, therefore, they did not have probable cause, they arrested Mr. Passmore and/or participated in his arrest without probable cause.

5.97 Under the Fourth Amendment, the issuance of an arrest warrant, requires probable cause which means the officer must have facts and circumstances within the officer's knowledge which would be sufficient to cause a prudent person to believe that a particular person had committed or was committing an offense.

5.98 Although Defendant Meyer told Mr. Passmore that he was being arrested for "failure to identify" and "disorderly conduct," she swore out the affidavit of complaint and sought a warrant for his arrest on the charges of "Reckless Endangerment" and "Resisting - Obstruction."

5.99 Under Tennessee law, the crime of Reckless Endangerment (Tenn. Code Ann. § 39-13-103) requires a person to recklessly engage "in conduct that places or may place another person in imminent danger of death or serious bodily injury" which requires there to be a reasonable probability of harm and not a mere possibility of harm.

5.100 Defendant Meyer knew at the time that she swore out the affidavit of complaint and sought a warrant to prosecute Mr. Passmore for Reckless Endangerment that she had no evidence that Mr. Passmore had placed anyone in "imminent danger of death or serious bodily injury."

5.101 Under Tennessee law, the crime of Resisting Stop, Frisk, Halt, Arrest or Search (Tenn. Code Ann. § 39-16-602) requires a person to intentionally prevent or obstruct a law enforcement officer from effecting a stop, frisk, halt, arrest, or search by using "force against the law enforcement officer."

5.102 Defendant Meyer knew at the time that she swore out the affidavit of complaint and sought a warrant to prosecute Mr. Passmore for "Resisting – Obstruction" that she had no evidence that Mr. Passmore had prevented or obstructed a law enforcement officer from effecting a stop, frisk, halt, arrest, or search of his person and that he also had used no force against any law enforcement officer.

5.103 Mr. Passmore's continued detention by the individual Defendants to seek his identification was without reasonable suspicion in violation of the Fourth Amendment.

5.104 Mr. Passmore's arrest for "failure to identify" was without probable cause in violation of the Fourth Amendment.

5.105 Mr. Passmore's arrest for "disorderly conduct" was without probable cause in violation of the Fourth Amendment.

5.106 Mr. Passmore's arrest and prosecution for reckless endangerment was without probable cause in violation of the Fourth Amendment.

5.107 Mr. Passmore's arrest and prosecution for "resisting – obstruction" was without probable cause in violation of the Fourth Amendment.

5.108 Mr. Passmore engaged in conduct protected by the First Amendment by questioning and criticizing the officers' asserted authority, asserting his constitutional rights, and stating that he would seek judicial redress through the courts if necessary, and, in retaliation for that protected conduct, the individual Defendants continued his detention and then arrested Mr. Passmore, thereby violating his rights under the First and Fourth Amendments to the United States Constitution.

5.109 Mr. Passmore repeatedly informed the individual Defendants that they had no authority to arrest him because there was no evidence that a crime had been committed.

5.110 Mr. Passmore informed the individual Defendants that he would protect his Fourth Amendment rights, including by seeking a redress of his grievances through a lawsuit.

5.111 The individual Defendants, in violation of Mr. Passmore's rights and in retaliation for Mr. Passmore asserting and protecting his rights, unlawfully continued his detention and ultimately arrested him without a legal basis for doing so.

5.112 As a result of Defendant Meyer's actions in making, influencing, and participating in the prosecution of Mr. Passmore, he was deprived of his liberty, had to make a $25,000 bond for his release from custody, hire an attorney to defend him on the false criminal charges, and lost possession of his property, including his firearm, until the charges were dismissed.

5.113 In doing the acts alleged in this complaint, Defendants Meyer, Emberton, Woodard, Vinson, and Petty were acting under the color of the statutes, ordinances, regulations, customs, policies, and usages of the Macon County Sheriff's Office, the State of Tennessee and under the authority of their office as deputies and law enforcement officers of the Macon County Sheriff's Office.

5.114 Mr. Passmore had not committed any crime, nor was there any evidence that he had done so.

5.115 Mr. Passmore had not engaged in conduct which constituted reckless endangerment against Mr. McDonald or any other person.

5.116 Mr. Passmore had not engaged in conduct which constituted resisting or obstructing his arrest by use of force against the officers.

5.117 In engaging in the acts described above, the individual Defendants acted knowingly, intentionally, maliciously, or with reckless or callous indifference to Mr. Passmore's federally protected rights.

**C. Training, Practices, Policies, Customs, and Procedures of Macon County**

5.118 Defendant Macon County is responsible for all wrongs, injuries, losses, damages and expenses resulting from the actions of Defendant Meyer, Emberton, Woodard, Vinson, and Petty in their positions as Deputy Sheriffs of Defendant Macon County, Tennessee, pursuant to Tenn. Code Ann. § 8-8-302.

5.119 Defendant Macon County was responsible for properly training Defendants Meyer, Emberton, Woodard, Vinson, and Petty in the requirement to have reasonable suspicion to continue an investigatory detention and probable cause to make an arrest.

5.120 Defendant Macon County was responsible for establishing policies, procedures, customs, and practices in making arrests and utilizing investigatory detentions by its employees.

5.121 It is obvious that the complete lack or inadequacy of policies, procedures, customs, and practices for making arrests or conducting investigatory detentions would lead to the deprivation of the right of persons to be free from detentions without reasonable suspicion and arrests and prosecutions without probable cause.

5.122 It is obvious that the complete lack or inadequacy of training for employees in making arrests or conducting investigatory detentions would lead to the deprivation of the right of persons to be free from detention without reasonable suspicion and arrest without probable cause.

5.123 The statements and conduct of the individual Defendants described above demonstrated that they were each operating under a common understanding that receipt of a call for service authorized them to detain a person and compel identification even after they lacked specific facts indicating that the person had committed a crime.

5.124 Defendant Macon County provided training, policies, practices, procedures, and customs to Defendant Meyer, Emberton, Woodard, Vinson, and Petty which, based on the demonstrated common understanding of the individual Defendants, required them to continue detaining someone despite having no evidence to suggest criminal activity simply to obtain a person's identification and to arrest that person if they fail to provide identification despite having no probable cause that the person had committed a crime.

5.125 Defendant Macon County's failure to provide the proper training, policies, practices, procedures, and customs related to continuing to detain or arresting persons who fail to provide identification was a moving force in causing Defendants Meyer, Emberton, Woodard, Vinson, and Petty to violate the rights of Mr. Passmore.

**COUNT I**
**(Fourth Amendment - Violation Of 42 U.S.C. § 1983 –**
**Unreasonable Seizure, False Arrest, and Failure to Intervene)**

6.1 At the time of the arrest, the individual Defendants lacked probable cause to believe Mr. Passmore had committed failure to identify, disorderly conduct, reckless endangerment, resisting arrest, or any other criminal offense.

6.2 Defendants Meyer, Emberton, Woodard, and Vinson continued to detain Mr. Passmore after they had already established that there were no facts known to the Defendants to support an inference that suggested there was criminal activity which made such continued detention in violation of Mr. Passmore's Fourth Amendment right to be free from continued detention without reasonable suspicion that he had committed a crime.

6.3 Defendants Meyer, Emberton, Woodard, and Vinson arrested Mr. Passmore without probable cause to believe that he had committed any criminal offense, in violation of Mr. Passmore's Fourth Amendment right to be free from seizure without probable cause.

6.4 Defendants Emberton, Woodard, Vinson, and Petty had the opportunity but deliberately chose to fail to intervene to prevent the continued detention, transport, and booking of Mr. Passmore despite observing, knowing, or having reason to know that there was no probable cause that Mr. Passmore had violated any criminal law.

6.5 As a direct and proximate result of the actions of the individual Defendants described above, Mr. Passmore was detained against his will after he had already provided information to them which did not support the existence of any criminal activity.

6.6 As a direct and proximate result of the actions of the individual Defendants described above, Mr. Passmore was arrested and had his property seized despite there being no evidence that he had committed a crime.

6.7 As a direct and proximate result of the actions of the individual Defendants described above, Mr. Passmore was taken to the jail for booking and formally charged with violating Tenn. Code Ann. §§ 39-13-103 and 39-16-602.

6.8 Pursuant to statute, Defendants Meyer, Emberton, Woodard, Vinson, and Petty are liable to Plaintiff for special and general compensatory damages, including but not limited to,

emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

**COUNT II**
**(Fourth Amendment - Violation Of 42 U.S.C. § 1983 –**
**Malicious Prosecution)**

7.1 Defendant Meyer's false statements, omissions, and other actions described above to obtain a criminal warrant against Mr. Passmore while acting under color of law, deprived Mr. Passmore of his right to be secure in his person against unreasonable seizure as guaranteed to Mr. Passmore under the Fourth Amendment to the United States Constitution.

7.2 As a result of Defendant Meyer's actions described above, Mr. Passmore was prosecuted for violating Tenn. Code Ann. §§ 39-13-103 and 39-16-602.

7.3 Defendant Meyer made, participated in, and/or influenced the prosecution of Mr. Passmore, in that she made false statements and omissions claiming that a witness had claimed that Mr. Passmore had fired his gun in the air when the witness had actually stated that this was just an assumption, and Defendant Meyer also falsely alleged that Mr. Passmore had resisted or obstructed her investigation into that claim but failed to include that Mr. Passmore did not resist or obstruct by the use of force against any of the officers when Mr. Passmore had fully complied with her arrest, frisk, and search.

7.4 Defendant Meyer's statements were made knowing that the statements were false or with a reckless disregard to their truth.

7.5 The prosecution of Mr. Passmore for violating Tenn. Code Ann. §§ 39-13-103 and 39-16-602 was without any probable cause because Mr. Passmore had not placed anyone in imminent danger of death or serious bodily injury and had not resisted or obstructed any law

enforcement officer from effecting a stop, frisk, halt, arrest, or search of him nor had he used force against any law enforcement officer.

7.6 As a direct and proximate result of the issuance of the warrant and criminal prosecution of Mr. Passmore for violating Tenn. Code Ann. §§ 39-13-103 and 39-16-602, Mr. Passmore was deprived of his liberty beyond his initial arrest as well as his right to be free from prosecution without probable cause.

7.7 The charges against Mr. Passmore for violation of Tenn. Code Ann. §§ 39-13-103 and 39-16-602 were dismissed on October 22, 2025.

7.8 Pursuant to statute, Defendant Meyer is liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

**COUNT III**
**(First Amendment - Violation Of 42 U.S.C. § 1983 – Retaliation)**

8.1 Defendants Meyer, Emberton, Woodard, Vinson, and Petty engaged in conduct which violated Mr. Passmore's civil rights after he engaged in protected conduct including questioning and criticizing the conduct of the officers, protecting his Fourth Amendment rights, and asserting that he would seek the protection of his rights and redress of his grievances in court including filing a lawsuit.

8.2 The individual Defendants took the actions to violate Mr. Passmore's rights as described above because Mr. Passmore had sought to protect his Constitutional rights, including his rights under the First and Fourth Amendment.

8.3 As a direct and proximate result of the individual Defendants' conduct described above, Mr. Passmore was detained, arrested, and prosecuted for crimes that he did not commit and had his property seized and withheld from him until the charges against him were dismissed.

8.4 The individual Defendants were aware that Mr. Passmore had not violated any criminal laws but chose to take the adverse actions against him in retaliation for him seeking to protect his Fourth Amendment rights and for his statements and conduct which were protected by the First Amendment.

8.5 Pursuant to statute, Defendants Meyer, Emberton, Woodard, Vinson, and Petty are liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, punitive damages, and reasonable attorney's fees and costs.

**COUNT IV**
**(MUNICIPAL LIABILITY - VIOLATION OF 42 U.S.C.A. § 1983)**

9.1 The conduct of Defendant Macon County described above was the moving force in causing the individual Defendants to deprive Mr. Passmore of his right to be free from continued detention without reasonable suspicion and arrest and prosecution without probable cause as secured by the Fourth Amendment to the United States Constitution.

9.2 As described above, Defendant Macon County provided training, policies, procedures, customs, and practices that required the individual Defendants to compel a person to provide identification despite the lack of any evidence that the person had committed any criminal offense and to continue an investigatory detention or arrest a person who failed to provide identification under such circumstances.

9.3 Pursuant to statute, Defendant Macon County is liable to Plaintiff for special and general compensatory damages, including but not limited to, emotional, physical, economic, and pecuniary damages, and reasonable attorney's fees and costs.

**COUNT V**
**(STATE LAW VICARIOUS LIABILITY - TENN. CODE ANN. §8-8-301, ET SEQ.)**

10.1 Pursuant to Tenn. Code Ann. § 8-8-302, Defendant Macon County is also liable to Mr. Passmore for the wrongs, injuries, losses, damages and expenses described above resulting from the actions of the individual Defendants who were Deputies appointed by the Macon County Sheriff and, at the time of the incident described in this complaint, were acting by virtue of or under color of that office.

**COUNT VI**
**(State Law – False Arrest)**

11.1 On August 8, 2025, Mr. Passmore was unlawfully detained and arrested by Defendants Meyer, Emberton, Woodard, Vinson, and Petty who either directly participated in Mr. Passmore's unlawful detention and arrest or failed to intervene to prevent the continued arrest and detention despite knowing that it was unlawful.

11.2 The individual Defendants detained and arrested Mr. Passmore without reasonable suspicion or probable cause and with evidence that Mr. Passmore had not committed any crime.

11.3 As a result of the unlawful detention and arrest Mr. Passmore suffered significant harm and damages, including the mental and emotional harm, humiliation, aggravation, and the cost and expense of being arrested and charged with criminal acts.

**DAMAGES**

12.1 As a direct and proximate result of the unlawful conduct of the Defendants as described above, Mr. Passmore experienced significant emotional suffering.

12.2 As a direct and proximate result of the unlawful conduct of the Defendants as described above, Mr. Passmore experienced significant mental anguish.

12.3 As a direct and proximate result of the unlawful conduct of the Defendants as described above, Mr. Passmore has experienced a diminished quality of life and impairment to his ability to enjoy life.

12.4 As a direct and proximate result of the unlawful conduct of the Defendants as described above, Mr. Passmore suffered a deprivation of his liberty and was kept in confinement at the Macon County Jail.

12.5 As a direct and proximate result of the unlawful conduct of the Defendants as described above, Mr. Passmore has incurred costs of hiring an attorney to defend himself against the Reckless Endangerment and Resisting – Obstruction charges.

12.6 As a direct and proximate result of the unlawful conduct of the Defendants as described above, Mr. Passmore had his property seized and withheld from him until the charges against him were dismissed.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully demands judgment against the Defendants, jointly and severally to the extent permitted by law, as follows:

1. That proper process issue and be served upon the Defendants, requiring them to answer this Complaint within the time required by law;

2. That Plaintiff be awarded a judgment for compensatory damages in an amount to be determined by the trier of fact not to exceed the maximum amount allowed by law;

3. That the Plaintiff be awarded a judgment for punitive damages in an amount that is necessary to punish the individual Defendants and to deter others from committing similar wrongs in the future;

4. That the Plaintiff be awarded his costs, litigation costs, discretionary costs, pre- and post- judgment interest, and attorney's fees pursuant to 42 U.S.C. § 1988; and

5. That Plaintiff be granted such other, further, and general relief as to which he is entitled.

Respectfully submitted,

MOSELEY & MOSELEY
ATTORNEYS AT LAW

By: /s/ *James Bryan Moseley*
James Bryan Moseley, No. 21236
237 Castlewood Drive, Suite D
Murfreesboro, Tennessee 37129
Phone: (615) 254-0140
Fax: (615) 634-5090
bryan.moseley@moseleylawfirm.com
*Attorney for Plaintiff*

/s/ *Leanne A. Thorne*
Leanne A. Thorne, No. 023481
P. O. Box 262
Lexington, TN 38351
(731) 968-9810
thornelaw@hotmail.com